IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | |
|---|---|
| KELLI S., INDIVIDUALLY AND ON BEHALF OF W.S., A MINOR INDIVIDUAL WITH A DISABILITY<br>*Plaintiffs,*<br><br>v.<br><br>KELSEY SMITH, LAUREN DAVIS, KEVIN MORGAN, JOHN CALDWELL, RYAN SHANDS, JAMIE CROSBY, CALLIE LEHMAN, SRO YOUNG (last name assumed), and WEATHERFORD INDEPENDENT SCHOOL DISTRICT<br>*Defendants.* | CIVIL ACTION NO. 4:21-cv-1088 |

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

Comes now, Kelli S. ("K.S.") individually, and on behalf of W.S., a Minor Individual with a Disability, files this Complaint and jury demand against Kelsey Smith, Lauren Davis, Kevin Morgan, John Caldwell, Ryan Shands, Jamie Crosby, Callie Lehman, Student Resource Officer ("SRO") Young (last name assumed), and Weatherford Independent School District ("WISD"), and in support thereof, would respectfully show this Court the following:

### THE PARTIES

1. PLAINTIFF, W.S., is a nine-year-old child who has been diagnosed with Autism Spectrum Disorder, Attention Deficit/Hyperactivity Disorder, Oppositional Defiant Disorder, Obsessive-Compulsive Disorder, Post Traumatic Stress Disorder, and General Anxiety Disorder.

2. W.S. is a child with a qualifying disability under the eligibility categories of autism, emotional disturbance, and a speech impairment as defined by the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1401(3).

1

3.  W.S. is and was, at all times relevant to this action, a citizen and resident of the County of Parker, State of Texas.

4.  PLAINTIFF PARENT, Kelli S., is W.S.'s mother.

5.  Kelli S. is and at all relevant times has been a citizen and resident of the County of Parker, State of Texas.

6.  DEFENDANT Weatherford Independent School District ("WISD") is a local educational agency as defined by the IDEA, 20 U.S.C. §1401(19), and as such, is obligated to provide educational and related programs and services to its students in compliance with the applicable federal and state statutes, regulations, and the U.S. Constitution, and is subject to the requirements of 20 U.S.C. § 1400 *et seq.*, and the regulations promulgated thereunder.

7.  Upon information and belief, at all times relevant to the events underlying these causes of action, DEFENDANT Kelsey Smith was the principal employed at Stephen F. Austin Elementary School in WISD.

8.  Upon information and belief, at all times relevant to the events underlying these causes of action, DEFENDANT Lauren Davis was the vice principal employed at Stephen F. Austin Elementary School in WISD.

9.  Upon information and belief, at all times relevant to the events underlying these causes of action, DEFENDANT Kevin Morgan is a teacher employed at Stephen F. Austin Elementary School in WISD.

10. Upon information and belief, at all times relevant to the events underlying these causes of action, DEFENDANT John Caldwell is a teacher employed at Stephen F. Austin Elementary School in WISD.

11. Upon information and belief, at all times relevant to the events underlying these causes of action, DEFENDANT Ryan Shands is a teacher employed in WISD.

12. Upon information and belief, at all times relevant to the events underlying these causes of action, DEFENDANT Jamie Crosby is a behavior specialist employed in WISD.

13. Upon information and belief, at all times relevant to the events underlying these causes of action, Callie Lehman is a classroom aide employed at Stephen F. Austin Elementary School in WISD.

14. Upon information and belief, at all times relevant to the events underlying these causes of action, SRO Young (last name assumed), was the state resource officer employed by WISD and/or a local law enforcement agency in Parker County, Texas.

## JURISDICTION AND VENUE

15. Jurisdiction is predicated upon 28 U.S.C. §1331, which provides the district courts of the United States with original jurisdiction over all civil actions arising under the laws of the United States, and upon the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act ("Section 504"), 42 U.S.C. § 12101 *et seq.*, 42 U.S.C. § 1983, and the Constitution of the United States.

16. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) based upon the residence of the parties and 28 U.S.C. §1391(b)(2) based upon where the events, acts, and omissions giving rise to Plaintiff's claims occurred.

17. The Fort Worth Division of the Northern District is the proper division because the conduct giving rise to this action occurred in Parker County.

## Factual Background

18. W.S. is a nine-year-old student who, at all times relevant to this proceeding, is eligible for special education services as a student with autism, emotional disturbance, and other health impairment under the IDEA.

19. During the 2019-2020 school year, W.S. was a second-grade student at Stephen F. Austin Elementary School in WISD.

20. WISD remains W.S.'s home district based on the residence of Plaintiff.

21. W.S. is diagnosed with Autism Spectrum Disorder, Attention Deficit/Hyperactivity Disorder, Oppositional Defiant Disorder, Obsessive-Compulsive Disorder, Post Traumatic Stress Disorder, and General Anxiety Disorder.

22. W.S. displays numerous challenging behaviors in the educational setting, including but not limited to, physical aggression, making loud noises, cursing, making violent threats, and removing his clothing.

23. Due to the WISD's staff's inability to deescalate W.S.'s behaviors in his special education classroom with a 2:1 student to staff ratio, W.S. was often taken to another room outside of his classroom referred to as a "cool down" room.

24. Despite the purpose of this room being a de-escalation method of behavior management used by WISD staff, W.S. was taken to the "cool down" room due to other student's behavior, during times his behavior was not at issue, and he was left in the "cool down" room even after his behaviors had de-escalated.

25. Due to W.S.'s resistance to transitions to the "cool down" room, WISD staff used physical restraints on W.S. during the transports.

26. W.S. and WISD staff have been injured during the use of physical restraints, including during transitions to the cool-down room.

27. The cool down room has a door which automatically locks. The door can only be unlocked electronically with a keypad device that is located above W.S.'s arm-reach.

28. W.S. would be locked in the cool down room with at least one WISD staff member.

29. On February 1, 2019, an incident occurred where W.S. was trapped inside a school locker.

30. WISD teacher Mr. Ryan Shands was present during the incident with the locker that occurred on that date.

31. A report prepared by Mr. Shands indicates W.S. entered the locker on his own and closed the locker door behind himself.

32. W.S. was then unable to get out of the locker, began to cry, banged on the locker from the inside, and asked Mr. Shands for help.

33. Mr. Shands responded to W.S.'s cries for help by telling W.S. that if he got into the locker on his own he could get himself out.

34. Mr. Shands then turned off the classroom lights, told W.S. everyone was going home for the day, including Mr. Shands, and walked away, leaving W.S. trapped inside the locker.

35. Mr. Shands eventually opened the locker door, at which time W.S. climbed out.

36. Mr. Shands report claims W.S. was in the locker for a minute or two, which is contradicted by other information within the same report based on the timeline of events that occurred while W.S. was inside the locker.

37. Plaintiff K.S. only recalls being informed of the incident involving W.S. in the locker after WISD had completed an investigation despite receiving other reports of W.S.'s behavioral incidents that occurred on the same day as the locker incident.

38. During the fall semester of the 2019-2020 school year, Plaintiff was notified of at least seven incidents of W.S. being physically restrained by WISD staff.

39. On September 27, 2019, WISD staff physically restrained W.S.

40. On September 27, 2019, Plaintiff K.S. observed W.S. had sustained bruises on his arm.

41. In a video recording of W.S. made by WISD on September 27, 2019, the school principal, Kelsey Smith, observed the marks/bruises on W.S.'s arm and tried several times to get W.S. to state that he had made the bruises himself.

42. On September 30, 2019, Plaintiff discussed the bruising with WISD staff, including Ms. Smith and Callie Lehman, W.S.'s classroom aide, to determine the cause of the bruising.

43. Plaintiff was unable to obtain satisfactory answers regarding what had occurred that resulted in the bruising and marks on W.S.

44. During the September 30, 2019, conversation between Plaintiff and Ms. Smith, Ms. Smith acknowledged to Plaintiff that more training for WISD staff was needed.

45. Also on September 30, 2019, W.S. was in the "cool down" room due to another student having a behavioral incident and not due to any concerns with W.S.'s behaviors.

46. While in the "cool down" room on September 30, 2019, W.S.'s behaviors eventually escalated and W.S. made statements that he wished he had killed himself.

47. To the best of Plaintiff's knowledge, WISD staff determined that W.S. was not suicidal as a result of the statements made by W.S. on September 30, 2019.

48. On October 15, 2019, W.S. was restrained by WISD staff and SRO Young also made contact with W.S. following a behavioral incident.

49. On October 16, 2019, Plaintiff was contacted by a child protective services ("CPS") investigator who informed Plaintiff a report was made by WISD staff on October 15, 2019, alleging that Plaintiff's adult son (W.S.'s adult brother) was sexually abusing W.S.

50. The child protective services investigator informed Plaintiff during the course of the investigation that WISD reported to CPS that its basis for making the CPS complaint was W.S.'s adult brother wearing women's clothing and make-up when he arrived at the school to take W.S. home.

51. Statements made by WISD staff alleging W.S.'s adult brother was wearing women's clothing and make-up were a lie, as the adult brother's clothing was unremarkable and he was not and does not wear any make-up.

52. The abuse allegations were determined by CPS to be baseless and the investigation against the adult sibling was closed.

53. The CPS report filed by WISD also contained allegations against Plaintiff, alleging she was abusing W.S.

54. To the best of Plaintiff's knowledge, the allegations against her involved her purchasing books for other children in W.S.'s class at a school book fair.

55. Upon information and belief, any statements made to CPS by WISD staff alleging Plaintiff abused the other children in W.S.'s classroom were an outright lie, as Plaintiff was never alone with those children at any time and did not abuse them in any way that was alleged to have occurred.

56. The allegations against Plaintiff were also unfounded by CPS and Plaintiff was advised by CPS to obtain legal representation against WISD.

57. The CPS report was made by WISD staff exactly two weeks after Plaintiff made an inquiry about WISD staff leaving marks and bruises on W.S. and immediately following another incident where W.S. was physically restrained by WISD staff.

58. Following the CPS report made by WISD after Plaintiff began asking questions regarding bruises and marks on W.S. Plaintiff believed were due to improper or excessive physical restraints by WISD staff, Plaintiff became fearful that any time Plaintiff made inquiries regarding W.S.'s educational program or the use of restraints on W.S., WISD would retaliate against her by calling in baseless CPS reports or by hurting W.S.

59. Plaintiff is required to obtain security clearance from the United States Department of Defense due to her work requirements, and now has to report the baseless CPS allegations made against her every time she needs to renew her security clearance.

60. On November 4, 2019, WISD staff physically restrained W.S.

61. Plaintiff was called to the school during the November 4, 2019, behavioral episode, where Plaintiff observed marks and bruises on W.S.

62. Plaintiff confronted WISD staff about the marks and bruises but did not receive an explanation regarding how the marks and bruises occurred.

63. After Plaintiff left the school on November 4, 2019, W.S. had another behavioral incident that afternoon, during which W.S. made self-deprecating statements such as "I'm the worst," and "I'm miserable."

64. At approximately 2:10pm on November 4, 2019, W.S. climbed onto a countertop that was less than four feet high and declared his intent to jump and kill himself.

8

65. Plaintiff also received conflicting verbal reports from the SRO that W.S. threatened to electrocute himself with a light socket in the ceiling. When the SRO was questioned by Plaintiff regarding W.S.'s ability to reach a light socket on the ceiling, the SRO subsequently changed his statement to say W.S. had threatened to electrocute himself with an electrical outlet in a wall.

66. WISD staff were able to de-escalate W.S., and by 2:45pm W.S. was calm and no longer displaying aggressive behavior.

67. Plaintiff arrived at the school to take W.S. home at approximately 3:20pm. Upon arriving, Plaintiff was taken to a separate room from W.S. by an SRO and prohibited from seeing or speaking to W.S.

68. When Plaintiff demanded the SRO either allow Plaintiff to see W.S. or produce a court order allowing the SRO to separate Plaintiff from W.S., the SRO responded by placing W.S. into his police vehicle and threatening to arrest Plaintiff and her adult son, who had accompanied Plaintiff to the school, if they interfered.

69. Despite WISD staff's knowledge that W.S. makes suicidal statements when aggravated, W.S. was transported to Cook Children's Medical Center by the SRO to be involuntarily committed.

70. W.S. was released to Plaintiff by Cook Children's Medical Center after two hours due to W.S. showing no signs of being suicidal.

71. Cook Children's Medical Center also made a CPS report against WISD due to W.S. having bruises.

72. W.S.'s pediatrician also saw W.S. the same morning WISD claimed W.S. was suicidal and had no concerns for W.S.'s mental state.

73. Following the November 4, 2019, incident, Plaintiff was directed by WISD to keep W.S. at home and not bring him back to the school.

74. Plaintiff refrained from advocating for W.S. on November 4, 2019, and during subsequent changes made to W.S.'s educational program in November 2019 to the fullest extent she otherwise would have due to the CPS reports pending against her and due to fear that her advocacy would cause WISD staff to continue to make baseless CPS reports against her and her adult son in retaliation. Plaintiff was also concerned WISD staff would further retaliate by harming W.S.

75. W.S. remained at home without academic instruction or education services until he was enrolled in a specialized private school in August 2020 for the 2020-2021 school year.

76. W.S. has continued to attend the private school for the 2021-2022 school year.

77. Plaintiff requested WISD provide audio and video recordings of W.S. on numerous occasions during the fall 2019 semester, including an Open Records Request Plaintiff filed with WISD on November 6, 2019.

78. Plaintiff renewed the November 6, 2019, Open Records Request on November 13, 2019, after not receiving a response from WISD.

79. Plaintiff eventually received video footage from multiple dates over the fall 2019 semester. When reviewing the video footage, Plaintiff observed that W.S. had been restrained *hundreds* of times.

80. WISD did not document the number of times restraints and physical force was used against W.S.

81. Restraints were, at times, administered by up to four adults at once and also conducted with W.S. in a standing position and supine or prone position.

82. The video footage contains shocking images, including a male staff member forcing W.S.'s head back and staff members applying restraints or force to W.S.'s neck/throat, head, and face.

83. There is video footage of Mr. Caldwell inappropriately applying force to W.S.'s head, neck, and face.

84. There is also video footage of Mr. Morgan applying inappropriate force to W.S.'s neck/throat.

85. WISD staff members can also be observed shoving food items into W.S.'s mouth during behavior incidents on at least two occasions.

86. Plaintiff did not receive all of the video footage she requested. For example, Plaintiff requested video footage from September 27, 2019, between 9:30am and 11:00am, yet was only provided 26 minutes of footage from 10:04am to 10:30am. When Plaintiff renewed her request for footage for that full time period, she was informed by WISD that staff had not pulled the footage when Plaintiff had requested it and the footage was therefore deleted because the cameras only had a 30-day retention policy.

87. Plaintiff has initiated an impartial proceeding under the IDEA regarding WISD's failure to provide W.S. with a free appropriate public education.

88. The impartial hearing is scheduled to occur January 23, 2021.

### FIRST CAUSE OF ACTION – ADA CLAIMS (W.S. v. WISD)

89. Plaintiff incorporates the preceding paragraphs as fully set forth herein.

90. Plaintiff was, with deliberate indifference or gross professional misconduct, discriminated against in violation of the ADA and its implementing regulations.

91. At all times relevant to these causes of action, Plaintiff W.S. was entitled to protections of the "Public Services" provision of Title II of the Americans with Disabilities Act, as amended.

92. Title II, Subpart A, prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, section 201 of the ADA. Pursuant to 42 USC § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. Plaintiff W.S. was at all times relevant herein a qualified individual with a disability as therein defined.

93. WISD has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability.

94. WISD has further failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by subjecting Plaintiff K.S. to a hostile educational environment.

95. As direct and proximate result of WISD's failure to comply with their duty under Title II, Plaintiff W.S. has suffered damages including special and general damages according to proof.

<u>SECOND CAUSE OF ACTION – SECTION 504 CLAIMS (W.S. V. WISD)</u>

96. Plaintiffs incorporates the proceeding paragraphs as fully set forth herein.

97. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 ("Section 504"), and the regulations promulgated thereunder prohibit discrimination against persons with disabilities. Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance.

98. Under Section 504, a "handicapped person" is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. 34 C.F.R. § 104.3(j).

99. "Discrimination" as defined in Section 504 can include failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or failing to "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that aid provided to others." 34 C.F.R. § 104.4(b)(1)(i-ii).

100. Unlike the IDEA, which requires that schools provide special education to qualifying students with disabilities, Section 504 requires schools to provide accommodations so that students with disabilities can access and benefit from regular education.

101. Plaintiff K.S. is informed and believes and thereon alleges that WISD is and has been at all relevant times the recipient of federal financial assistance, and that part of that financial assistance has been used to fund the operations, construction, and/or maintenance of the specific public facilities described herein and the activities that take place therein.

102. By its actions or inactions in denying equal access to educational services by failing to provide Plaintiff W.S. with the accommodations needed to afford a free appropriate public education ("FAPE"), subjecting Plaintiff W.S. to a hostile educational environment, and causing him emotional distress, WISD has violated Plaintiff's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the regulations promulgated thereunder.

103. As a result of WISD's failure to comply with its duty under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and the regulations promulgated thereunder, Plaintiff W.S. has suffered damages including special and general damages according to proof.

104. WISD's acts and omissions violated Plaintiff W.S.'s rights under Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, *et seq*.), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 7940. Plaintiff W.S. therefore brings this action to correct WISD's unlawful conduct.

### THIRD CAUSE OF ACTION – Section 504/ada claims (K.S. v. WISD)

105. Plaintiff incorporates the proceeding paragraphs as fully set forth herein.

106. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and the regulations promulgated thereunder prohibit discrimination against persons with disabilities. Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance.

107. Section 504's anti-retaliation provision includes acts that "intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any [rights he has under Section 504]." In addition, acts of intimidation, retaliation, etc., taken against an individual because he has filed a complaint, testified, or otherwise participated in an Office of Civil Rights (OCR) investigation are prohibited.

108. Encompassed within this provision are retaliatory acts against persons who complain of unlawful discrimination in violation of Section 504 on behalf of an individual with a disability. 34 C.F.R. § 100.7(e).

109. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, Section 201 of the ADA. Pursuant to 42 U.S.C. § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

110. Plaintiff K.S. suffered adverse consequences for advocating on behalf of W.S., who was at all times relevant herein a qualified individual with a disability as therein defined.

111. WISD has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability and by discriminating and retaliating against K.S. for engaging in a protected activity on behalf of W.S.

112. WISD has further failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by subjecting Plaintiff K.S. to a hostile educational environment.

113. Plaintiff K.S. is informed and believes and thereon alleges that WISD is and has been at all relevant times the recipient of federal financial assistance, and part of that financial assistance has been used to fund the operations, construction and/or maintenance of the specific public facilities described herein and the activities that take place therein.

114. By retaliating against K.S. for engaging in a protected activity, WISD has violated Plaintiff K.S.'s rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder.

115. Plaintiff K.S. was, with deliberate indifference or gross professional misconduct, discriminated and retaliated against in violation of the ADA and its implementing regulations.

116. As a result of WISD's actions and failure to comply with its duty under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the ADA, and the regulations promulgated thereunder, Plaintiff K.S. has suffered adverse action and damages including special and general damages according to proof.

117. WISD's acts and omissions violated Plaintiff K.S.'s rights under Title II of the ADA 42 U.S.C. § 12131, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 7940. Plaintiff therefore brings this action to correct WISD's unlawful conduct.

### FOURTH CAUSE OF ACTION (K.S. v. WISD)

118. Plaintiff incorporates the preceding paragraphs as fully set forth herein.

119. Plaintiff engaged in protected speech by advocating on behalf of her disabled child and raising concerns with her son's treatment and the behavior management techniques deployed by WISD staff.

120. WISD retaliated against Plaintiff by filing a frivolous and meritless CPS report against Plaintiff and her adult son within two weeks of Plaintiff making an inquiry regarding WISD staff leaving marks and bruises on W.S. through their use of restraints and within the same day as another incident involving WISD staff using physical restraints against W.S.

121. All actions taken by WISD and/or the Student Resource Officer were done while acting under the color or state of law and had the effect of depriving Plaintiff rights secured by the Constitution and laws of the United States, specifically those rights secured by and protected within the First Amendment of the United States Constitution.

122. WISD's actions would deter a person of ordinary firmness from engaging in protected speech of this nature, including advocacy for their disabled child, and there is a causal connection between Plaintiff's advocacy and the filing of the CPS report against Plaintiff.

123. A parent's right to be free from retaliation for exercising their First Amendment right to criticize or raise concerns about actions taken by school staff is clearly established, and reasonable school officials and staff would have understood that the actions taken by WISD staff would violate this right.

124. WISD staff, as government officials employed by a public school, through their individual and collective actions, have violated the IDEA and the U.S. Constitution.

125. As a result of WISD staff actions and failure to comply with its duty under 42 U.S.C. § 1983 and the U.S. Constitution and the regulations promulgated thereunder, Plaintiff has suffered adverse action and damages including special and general damages according to proof.

## FOURTH CAUSE OF ACTION

### (W.S. v. Kelsey Smith, Lauren Davis, Kevin Morgan, John Caldwell, Ryan Shands, Jamie Crosby, and callie lehman).

126. Plaintiff incorporates the preceding paragraphs as fully set forth herein.

127. WISD staff violated W.S.'s right to be free from unreasonable seizures under the Fourth Amendment of the United States Constitution and right to due process under the Fourteenth Amendment.

128. A student's right to be free from unreasonable seizure in school is a clearly established right under the Fourth Amendment of the U.S. Constitution.

129. Defendants Kelsey Smith, Lauren Davis, Kevin Morgan, John Caldwell, Ryan Shands, Jamie Crosby, and Callie Lehman, as government officials employed by a public school, violated W.S. right to be free from unreasonable seizure through the use of unreasonable and unlawful restraints and placing W.S. in isolation based on the facts described herein.

130. As a result of WISD staff actions and failure to comply with its duty under 42 U.S.C. § 1983 and the U.S. Constitution and the regulations promulgated thereunder, Plaintiff has suffered adverse action and damages including special and general damages according to proof.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Kelli S. respectfully requests this Court accept jurisdiction, receive all the records of the administrative proceedings, incorporate all the facts and circumstances set

forth above, accept additional evidence as will be offered, and enter judgment against Kelsey Smith, Lauren Davis, Kevin Morgan, John Caldwell, Ryan Shands, Jamie Crosby, and the Weatherford Independent School District, jointly and severally, for an amount which will fully and fairly compensate Plaintiff for the injuries and damages as alleged herein; for interests and costs as allowed by law; for attorneys' fees as allowed by law' equitable relief and damages, including but not limited to, punitive damages and for such other and further relief that the Court deems just and proper.

Respectfully submitted this 24th day of September, 2021.

LAW OFFICE OF BECKY BEAVER
3500 Jefferson Street, Suite 210
Austin, Texas 78731
(512) 474-5791  Telephone
(512) 474-4169  Facsimile

By: */s/ Elizabeth Angelone*
Elizabeth Angelone
SBN: 24077349
eangelone@beckybeaverlaw.com